Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JAIME VILLA and MELISA CHAVEZ,<br><br>          Plaintiffs,<br><br>     vs.<br><br>RENO HOUSING AUTHORITY and DOES 1 through 50, inclusive,<br><br>          Defendant(s). | CASE NO.<br><br>**COMPLAINT**<br><br>1)  Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201, et. seq;<br><br>2)  Failure to Pay Overtime in Violation of 29 U.S.C. § 207;<br><br>3)  Failure to Pay Minimum Wages in Violation of the Nevada Constitution<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

COME NOW Plaintiffs JAIME VILLA and MELISA CHAVEZ ("Plaintiffs") hereby alleges as follows:

All allegations in this Complaint are based upon information and belief except for those allegations that pertain to the Plaintiffs named herein and their counsel.  Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

/ / /

/ / /

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331, the federal question being the application and interpretation of the Fair Labor Standards Act (29 U.S.C. §216(b) (hereinafter also referred to as the "FLSA"), which states, in part: "An action to recover the liability prescribed in either of the preceding sentences may be maintained  against any employer (***including a public agency***) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and others employees similarly situated."

2.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U. S. C. § 1367 because they all arise out of the same transaction and occurrence, i.e. the failure to properly pay all wages due to Mr. Villa and Ms. Chavez.

3.     Plaintiffs have a private right of action for minimum wages for all hours worked pursuant to Section 16 of Article 15 of the Nevada State Constitution.  Article 15, Section 16(B) of the Constitution of the State of Nevada states in relevant part: "An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

4.     Plaintiffs and Defendant are residents of the State of Nevada.

5.     Venue is proper in this Court because the Defendant named herein maintains its principal place of business, or otherwise is found, in this judicial district and the acts complained of herein occurred in Washoe County.  *See* U.S.C. § 1391(b).

## PARTIES

6.     Plaintiff JAIME VILLA is natural person who is and was a resident of the State of Nevada and was employed by Defendant beginning on or about August 2012 until on or about May 2016.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

7.      Plaintiff MELISA CHAVEZ is a natural person who is and was a resident of the State of Nevada and was employed by Defendant beginning on or about August 2012 to on or about May 2016.

8.      Defendant RENO HOUSING AUTHORITY, officially known also as Housing Authority of Reno (hereinafter "DEFENDANT" or "RHA") is, upon information and belief, a municipal corporation under Chapter 315 of the Nevada Revised Statute.   A municipal corporation does not enjoy sovereign immunity, and even if it did, the State of Nevada has waived sovereign immunity from suit for itself and *all* its political subdivisions for the claims alleged herein.  See NRS 41.031.

9.      The identity of DOES 1-50 is unknown at this time, and this Complaint will be amended at such time when the identities are known to Plaintiffs.  Plaintiffs are informed and believe that each Defendant sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "RHA" herein shall mean "Defendant and each of them."

## SUMMARY OF ALLEGATIONS

10.      Pursuant to an express agreement, partially written and partially oral, Defendant allowed Plaintiffs to live in one of its apartments rent free in exchanged for performing work requested and required by the Defendant for the benefit of the Defendant.

11.      The written portion of this agreement is called a "Live In" agreement that is identical in form and content for all live-ins.  A sample copy of a Live-In Agreement is attached hereto as Exhibit A.  Plaintiffs performed their job duties in a competent and professional manner, if not exemplary manner, and were well qualified for their positions.

12.      The Fair Labor Standards Act (29 U.S.C. §206, hereinafter "FLSA") requires Defendant to pay Plaintiffs the federal ($7.25 per hour) minimum wage for all the time they were suffered or permitted to work.

13.      Section 16 of Article 15 of the Nevada State Constitution requires Defendant to pay Plaintiffs the state ($8.25 per hour in this case) minimum wage for all the time they were suffered or permitted to work.

14. The Fair Labor Standards Act (29 U.S.C. §207) also requires Defendant pay Plaintiffs one and one half times their hourly "regular rate" for all hours worked after 40 in a workweek.

15. As more fully set forth hereinafter, work in exchange for housing is a "barter" or "in kind" arraignment that does not provide for the payment of minimum wages or overtime premium pay to the employee and is therefore not permitted under federal or state law.

16. The Live-In Agreement specifies that except for a two-week vacation, and a few holidays per year, Plaintiffs must work approximately forty hours a week, fifty weeks a year performing the functions of an assistant apartment manager without any pay at all.

17. In addition, the agreement requires that the Plaintiffs remain within 15 minutes of site to be available to receive additional work assignments at the request and mandate of the Defendant for the benefit of the Defendant no less than 113 hours a week, consisting of thirteen hours a day for five days a week and "around the clock" on weekends and holidays. Plaintiffs frequently receive additional work assignments after normal business hours and are not paid for either the standby time, or the time it takes to perform the additional assignments.

18. Thus, Defendant requires Plaintiffs to work, or be on call, 113 hours a week without any pay.

19. There is no state law that allows for set off of housing or other "in kind" payments to employees against the state constitutional minimum wage amounts. NRS 608.155 is limited to meals and does not apply to the constitutional minimum wage.

20. Under federal law, housing allowances to offset minimum wage requirements are limited by federal regulations to the lower of the 1) actual cost of providing the housing or 2) fair market rental value of the housing provided. 29 C.F.R. § 531.3.

21. Under federal law, housing allowances to offset minimum wage requirements cannot be taken unless such board, lodging, or other facilities are customarily furnished by such employer to his employees ..." 29 U.S.C.A. § 203(m).

22. Upon information and belief, Defendant does not customarily furnish free apartments to any of its other employees. The administrator of the Wage Hour Division of the

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

United States Department of Labor has never determined the "reasonable cost" of this housing, and since state law does not allow a deduction for in kind payments of the minimum wage, a housing allowance deduction cannot be taken under federal law in this case either.

23. In addition, the cost of furnishing housing primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages paid under the Fair Labor Standards Act. The reason Defendants provided housing for Plaintiffs, while not providing housing for other employees, was for the convenience of the Defendant so that Plaintiffs could perform the services of watchman/guard as well as maintenance employees, and to make sure Plaintiffs were accessible to resolve tenant related issues twenty-four/seven. 29 C.F.R. § 531.3(d)(1).

24. According to Defendant's rental agreements, a two-bedroom apartment rate of $751 per month was the rent Plaintiffs paid prior to becoming live-ins. *See* Family Rental Payment Authorization dated August 12, 2011, attached as Exhibit B. Thus, $751 a month is the maximum value the employer may claim under the regulations pursuant to the first proviso of 29 C.F.R. § 531.3(c), or less if the actual costs to Defendant are less.

25. Even if the Plaintiff worked only 40 hours a week, the hourly rate for this in kind payment would be only $4.51 an hour, or less, which is less than the minimum state or federal minimum wage.

26. Based upon the work hours required by the Live-In Agreement, the hourly rate for this in kind payment would be only $1.60 cents an hour, or less, which is less than the minimum state or federal minimum wage.

## GENERAL FACTUAL ALLEGATIONS

27. As stated on its Web site, Defendant RHA currently owns and manages 764 units of Public Housing (475 for families) in seven different locations in the cities of Reno and Sparks under the Public Housing programs, through the use of the Neighborhood Stabilization Programs and other funding, and owns over 100 rental properties specifically targeted for low income households.

28.     Pursuant to the written Live-In Agreement, a copy of which is attached as Exhibit A and incorporated by reference as if fully set forth herein, Defendant allowed Plaintiffs to occupy one of these units, said occupancy to be free of rent in exchanged for Plaintiffs performing work required by the Defendant, for the benefit of the Defendant.

29.     At all times relevant herein, the fair market rental value of the apartment furnished to Plaintiffs and other "Live Ins" never exceeded $751 a month, based upon Defendant's rental agreement with Plaintiffs prior to them becoming live-ins.  Nor did the actual cost of providing this housing exceed $751 a month.

30.     Dividing $751 a month by the number of non-overtime hours in a work-month equals $4.51 an hour, significantly below both state and federal minimum wages.

31.     Dividing $751 a month by the number of hours required by the Live-In Agreement to be worked in a work-month equals $1.60 per hour, significantly below both state and federal minimum wages.

32.     In exchange for the zero rent apartment, Plaintiffs were required to perform certain duties for the benefit of the employer/RHA.

33.     These duties constitute compensable "work" as that term is defined under both federal and state law.

34.     In addition to working 40 hours a week, Defendant required Plaintiffs to be "on call" to perform the same or similar tasks as its regular work at the request of the Defendant for the benefit of the Defendant at least another 73 non-holiday hours per week without any additional compensation.

35.     Plaintiffs were frequently and regularly called during this on-call time, at no pay, to perform these additional tasks.  The conditions of the on-call time were so restrictive that Plaintiffs could not engage in normal non-working activities.  Specifically, during this on-call time, Defendant required Plaintiffs to remain on site or be within 15 minutes of actual responding to a call to return to the site, so that Plaintiffs could not obtain another job, could not go to the movies, could not visit friends away from the complex, and could not engage in normal free-time activities in the hours set forth under the Live-In Agreement.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

36.     Plaintiffs no longer have copies of the Live-In Agreements they signed but have reviewed an example Agreement and believe that Exhibit A is identical in form and content to the Live-In Agreements they signed.

37.     As more fully set forth in the written agreement, these duties basically were of the nature of a watchman/guard and a handyman/maintenance person during the Live-In Agreement's required hours.

38.     The written agreement states, in part, as follows:

This agreement is between the Reno Housing Authority, hereinafter referred to as "RHA," and [NAME of Live In], hereinafter referred to as the "Live-In." RHA and the Live-In agree as follows:

1.   RHA will permit the Live-In to occupy unit number [REDACTED] at [ADDRESS], said occupancy to be free of rent.

2.   In consideration of the above, the Live-In will provide services to RHA for the [REDACTED] housing developments, hereinafter referred to as "Housing Development," as follows:

A.   The Live-In will be available to answer, respond to and take appropriate action in a timely manner with respect to any emergency call received during the hours of 6:00 p.m. to 7:00 a.m., Monday through Friday. On Saturdays, Sundays and holidays, the Live-In will be on call around the clock.

B.   The Live-In shall perform daily inspections of the housing development with specific attention to exterior lighting, security of vacant units, vehicle violations and identifying and reporting any tenant activity that is contrary to the rules and regulations of RHA.

C.   The Live-In shall perform occasional cleanup of those areas in the assigned development designated by the Asset Manager, including snow removal at any handicapped units. In any event, it shall be the responsibility of the Live-In to keep the designated areas in a clean and safe condition at all times and to immediately report any discrepancies to the Asset Manager.

D.   The Live-In must either be on premises or close enough to respond within no more than 15 minutes and be available to perform emergency work and to provide the services set forth above during the hours hereinbefore set forth.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

3. In addition to receiving the right to occupy the dwelling unit described above for zero rent, the Live-In person shall not be required to carry out these duties on:

    A. Six legal holidays per year
    B. Five complete weekends each year
    C. Two full work weeks each year (Monday - Friday)

The request to be off duty on these dates must be made and approved in writing by the Asset Manager at least seven days in advance. In addition thereto, up to eight days off for sickness may be allowed in any calendar year.

The Live-In will receive no compensation or other consideration for any of the above days not utilized by the end of the one year lease period, nor shall such days off accrue beyond the end of the one year lease period. (Time period here.)

4. The Live-In agrees and stipulates that his/her occupation of the dwelling unit is a "Tenancy at Will" and agrees to vacate said unit within five days of receipt of the Notice to Vacate from RHA.

39.     Willfulness is a common question for all opt in class members because it focuses on the Defendant's state of mind. Even if the law allowed the use of "in kind" payments by providing housing for work, which it does not, the value of the rental unit furnished divided by the hours the Defendant required the "Live Ins" to work was less than two dollars an hour, so flagrantly below any living wage that any reasonable person would know that this arrangement was morally as well as legally wrong. Demanding that each Live In devote 113 hours a week of time to Defendant effectively means the Live Ins are precluded from finding other work, but risk becoming homeless if they refuse to devote this time to performing tasks for Defendant. Furthermore, it is unconscionable that a quasi-governmental agency should become a prime example of the underground economy in our state, using a barter system to avoid worker's compensation payments, social security taxes, unemployment insurance, other payroll taxes and the obligations of our society while extracting labor from those least able to protect themselves. Defendant has willfully failed to pay their employees properly.

## **FIRST CAUSE OF ACTION**

### **Failure to Pay Wages in Violation of the FLSA, 29 U.S.C. § 201, *et seq.*)**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

40.     Plaintiffs reallege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

41.     Pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*, Plaintiffs are entitled to compensation at their regular rate of pay or minimum wage rate, whichever is higher, for all hours actually worked.

42.     29 U.S.C. § 206(a)(l) states that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than (A) $5.85 an hour beginning on the 60th day after the enactment of the Fair Minimum Wage Act of 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and C) $7.25 an hour, beginning 24 months after that 60th day."

43.     Once the workday has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's regular rate of pay, whether scheduled or not.

44.     By stealing Plaintiffs hours, Defendant failed to pay Plaintiffs for all the hours they worked.

45.     Plaintiffs have signed consent to sue forms, attached as Exhibits C and D, respectively, Villa Consent to Sue and Chavez Consent to Sue.

46.     Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair.  Working employees for less than $1.36 cents an hour by making "in kind" payments of free housing in lieu of paying wages and making contributions for social programs like social security, disability, workers compensation and the like is a flagrant example of a public agency engaging in the underground economy which the public agencies are charged with preventing, and therefore, sufficient for a three (3) year statute of limitations.

47.     Wherefore, Plaintiffs demand for themselves that Defendant pay Plaintiffs their minimum hourly wage rate or their regular rate of pay, whichever is greater, for all hours worked

during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207

48.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

49.     29 U.S.C. Section 207(a)(1) provides as follows:  "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

50.     Once the workday has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's regular rate of pay, whether scheduled or not.

51.     By failing to pay Plaintiffs for all hours worked in excess of forty (40) hours in a week, Defendant has violated 29 U.S.C. Section 207(a)(1).

52.     Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair.

53.     Wherefore, Plaintiffs demand that Defendant pay Plaintiffs one and one half times the minimum wage, or their regular hourly rate of pay, whichever is greater, for all hours worked in excess of forty (40) hours a week during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## THIRD CAUSE OF ACTION

### Failure to Pay Minimum Wages in Violation of the Nevada State Constitution

54.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Case 3:16-cv-00441-RCJ-WGC   Document 1   Filed 07/25/16   Page 11 of 24



**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com


55.     Article 15, Section 16(A) of the Constitution of the State of Nevada states:

Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase shall be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%. The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1. Such bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive such notice but lack of notice shall not excuse noncompliance with this section. An employer shall provide written notification of the rate adjustments to each of its employees and make the necessary payroll adjustments by July 1 following the publication of the bulletin. Tips or gratuities received by employees shall not be credited as being any part of or offset against the wage rates required by this section.

56.     At all times relevant herein, Defendant did not provide Plaintiffs health insurance.

57.     At all times relevant herein, the Nevada Constitutional Minimum wage applicable to Plaintiffs and all class members was $8.25 an hour.


- 11 -
COMPLAINT

58.     Because there is no explicit statute of limitations for violation of a constitutional mandate, the four-year "catch all" statute of NRS 11.220 applies.

59.     Article 15, Section 16(C) of the Constitution of the State of Nevada states: "As used in this section, "employee" means any person who is employed by an employer as defined herein but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days. "Employer" means any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity that may employ individuals or enter into contracts of employment."

60.     None of the exceptions to the definition of employee contained in the constitution applies to Plaintiffs.

61.     Defendant Reno Housing Authority employs and enters into contracts of employment with many people, including by not limited to, managers, office personal, grounds keepers and others.

62.     NRS 608.016 states, "An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

63.     Nevada Administrative Code (hereinafter "NAC") 608.115 states: 1). An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee; [and] 2).  If an employer pays an employee by salary, piece rate or any other wage rate except for a wage rate based on an hour of time, the employer shall pay an amount that is at least equal to the minimum wage when the amount paid to an employee in a pay period is divided by the number of hours worked by the employee during the pay period. This subsection does not apply to an employee who is exempt from the minimum wage requirement pursuant to NRS 608.250.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

64.     As a result of Defendant's breach, Plaintiffs have suffered economic loss that includes lost wages in the form of regular rate and overtime wages, plus interest over the last four years.

65.     Wherefore, Plaintiffs demand that Defendant pay Plaintiffs their minimum wage for all hours worked for four (4) years from the date of filing this complaint until a judgment is entered in this case, together with attorney's fees, costs, and interest as provided by law.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for relief as follows:

1.     For damages according to proof for minimum rate pay under federal law for all hours worked

2.     For damages according to proof for minimum rate pay under Section 16 of Article 15 of the Nevada State Constitution for all hours worked;

3.     For damages according to proof for overtime compensation at the correct and legally applicable overtime rate under state and federal law;

4.     For liquidated damages pursuant to 29 U.S.C. § 216(b);

5.     For interest as provided by law at the maximum legal rate;

6.     For reasonable attorneys' fees as mandated by statute and the Nevada constitution;

7.     For costs of suit incurred herein; and

8.     For such other and further relief as the Court may deem just and proper.

Dated this 25th day of July 2016.                    THIERMAN BUCK LLP


                                                    By:     /s/ Mark R. Thierman
                                                            MARK R. THIERMAN
                                                            JOSHUA D. BUCK
                                                            LEAH L. JONES
                                                            *Attorneys for Plaintiff*

# EXHIBIT A

# EXHIBIT A

**Essex Manor Apartments** Live-in Agreement – 2014-2015                                 Page 1

This agreement is between the Reno Housing Authority, hereinafter referred to as "RHA," and
, hereinafter referred to as the "Live-In."  RHA and the Live-In agree as follows:

1.  RHA will permit the Live-In to occupy unit number        at                                        , said
    occupancy to be free of rent.

2.  In consideration of the above, the Live-In will provide services to RHA for the
        housing developments, hereinafter referred to as "Housing Development," as follows:

    A.  The Live-In will be available to answer, respond to and take appropriate action in a timely manner
        with respect to any emergency call received during the hours of 6:00 p.m. to 7:00 a.m., Monday
        through Friday.  On Saturdays, Sundays and holidays, the Live-In will be on call around the clock.

    B.  The Live-In shall perform daily inspections of the housing development with specific attention to
        exterior lighting, security of vacant units, vehicle violations and identifying and reporting any tenant
        activity that is contrary to the rules and regulations of RHA.

    C.  The Live-In shall perform occasional clean up of those areas in the assigned development
        designated by the Asset Manager, including snow removal at any handicapped units.  In any event, it
        shall be the responsibility of the Live-In to keep the designated areas in a clean and safe condition at
        all times and to immediately report any discrepancies to the Asset Manager.

    D.  The Live-In must either be on premises or close enough to respond within no more than 15 minutes
        and be available to perform emergency work and to provide the services set forth above during the
        hours hereinbefore set forth.

3.  In addition to receiving the right to occupy the dwelling unit described above for zero rent, the Live-In
    person shall not be required to carry out these duties on:

    A.  Six legal holidays per year
    B.  Five complete weekends each year
    C.  Two full work weeks each year (Monday – Friday)

    The request to be off duty on these dates must be made and approved in writing by the Asset Manager at
    least seven days in advance.  In addition thereto, up to eight days off for sickness <u>may</u> be allowed in any
    calendar year.  The Live-In will receive no compensation or other consideration for any of the above days
    not utilized by the end of the one year lease period, nor shall such days off accrue beyond the end of the
    one year lease period.  (September 1, 2014 to August 31, 2015)

4.  The Live-In agrees and stipulates that his/her occupation of the dwelling unit is a "Tenancy at Will" and
    agrees to vacate said unit within five days of receipt of the Notice to Vacate from RHA.

5.  This Agreement may be terminated by either party at any time by giving five days notice of termination.
    The notice of termination will also serve as a Notice to Vacate the unit in accordance with applicable
    Nevada law.

6.  The Security Deposit may be used by RHA at the termination of this Tenancy at Will toward the costs of
    repairing any intentional or negligent damages to the dwelling unit and cleaning of the premises
    necessitated by the Live-In, members of his/her household or guests and deferring any other charges
    owed by the Live-In.

    RHA agrees to return the Security Deposit within three weeks to the Live-In when he/she vacates, less any

**Essex Manor Apartments** Live-In Agreement – 2014-2015                                      Page 2

deductions for any of the costs indicated above.  If such deductions are made, RHA will give the Live-In a written statement of any such costs for damages and/or other charges deducted from the Security Deposit.

The Live-In shall pay reasonable charges for maintenance and repair beyond normal wear and use, and for cleaning and fumigation rendered necessary by the acts or neglects of the Live-In, in accordance with the Schedule of Rents for services and repairs posted in RHA offices.  Such charges shall be billed to the Live-In and shall specify the items and damages involved, correctional action taken and the cost thereof.  Charges assessed the Live-In by RHA for maintenance and repairs shall become due and payable on the first day of the second month following the month in which the charges are incurred.

The Live-In also agrees to pay, as billed, the monthly charges incurred for the following utilities and services:  electricity, gas, water, cable, and telephone.  When the Live-In leaves their unit or the premises, they must have a working cellular phone on their person and remain close enough to the development to respond to any calls for service within no more than 15 minutes when on duty.  Any exceptions must be cleared in advance with the Asset Manager.  Anyone not responding in this time period will be in violation of this agreement and subject to having their lease terminated.

7.  The Live-In agrees to abide by the following rules and obligations while residing in the dwelling unit:

A.  Not to assign or sublease the premises;

B.  Not to provide accommodation for boarders or lodgers;

C.  To use the premises solely as a private dwelling unit for the Live-In and members of his/her household and in conjunction with the discharge of his/her obligations under this Agreement.  Live-In's guests or visitors may stay for up to three days, or a longer period if approved in writing by RHA.

D.  To abide by necessary and reasonable regulations promulgated by RHA for the benefit and well being of the housing  development and its tenants, which shall be posted in the RHA offices and which are incorporated by reference in this Agreement;

E.  To comply with obligations imposed upon Tenants by applicable provisions of Buildings and Housing Codes materially affecting health and safety;

F.  To keep the building and equipment in a clean and sanitary condition and to refrain from moving into the dwelling unit any furniture or furnishing which are not in a sanitary condition;

G.  To keep the premises and such other areas as may be assigned to the Live-In in a clean and safe condition, including snow removal;

H.  To comply with RHA policy prohibiting waterbeds in all dwelling units.

I.  To dispose of all garbage, rubbish and other waste from the premises in a sanitary and safe manner;

J.  To maintain utility service in Live-in's name for all utilities.

K.  To use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appurtenances;

L.  To refrain from and to cause his/her household guests to refrain from destroying, damaging, or removing any part of the premises or developments; and to accept responsibility for such acts resulting in a loss to RHA;

**Essex Manor Apartments** Live-~ ~greement – 2014-2015                                    Page 3

M.  To pay reasonable charges (other than for ordinary wear and use) for the repair of damages to the premises, development buildings, facilities or common areas caused by Tenant or any guests.

N.  To refrain from waste or excessive use of water, gas or other fuel or utility services;

O.  To refrain from bringing or storing trailers or other non-operating vehicles on the premises;

P.  To abide by RHA vehicle registration policy and procedures.

Q.  To conduct himself/herself and cause other persons who are on the premises, with consent of the Live-In, to conduct themselves in a manner which will not disturb his/her neighbor's peaceful enjoyment of their accommodations and of the common areas of the housing development, and will be conducive to maintaining the development in a decent, safe and sanitary condition;

R.  To not engage in criminal activities in the dwelling unit or on the property of the housing development, and to prevent criminal activities in the unit or on the property of the housing development by guests, visitors, or other persons under the control of or the invitees of Live-In or household members.

S.  Not to display on or about the premises any advertisements for goods or services without prior written approval of RHA.

T.  Not to make any repairs or alterations, nor to install any major appliances, such as air conditioners, dryers, television aerials, etc., without the prior written consent of RHA.

U.  Not to engage in any drug-related criminal activity on or off the premises.

V.  Not to illegally use a controlled substance.

W.  Not to abuse alcohol so that it interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents.

X.  Not to commit any act of physical violence against persons or unlawful damage to the property of the Housing Authority or of tenants or employees of the Housing Authority.

Y.  To refrain from illegal or other activities which impair the physical or social environment of the development.

Z.  Live-in must maintain telephone service and must have a working cellular phone in their possession whenever they leave their unit or development when on call.

AA.  **Barbeques prohibited** – the storage and use of any and all open flame cooking devices and propane or gas-fueled cooking devices on porches, patios, planter areas and sidewalks adjacent to all buildings is prohibited. Examples of prohibited devices include, but are not limited to, open fire barbecues, hibachis, and any other types of broiling equipment using coal, charcoal, wood, propane or gas.

BB.  **Outdoor Electric Grills** – may be used on patios and porches, as long as there is an appropriate GFCI (Ground Fault Current Interrupter) outlet on the patio or porch. Contact your manager if you have any questions.

**Essex Manor Apartments** Live In Agreement – 2014-2015                                    Page 4

8. The Live-In agrees that RHA may enter the dwelling unit as follows:   RHA shall, upon a reasonable advanced notification to the Live-In, be permitted to enter the dwelling unit during reasonable hours for the purpose of performing routine inspections and maintenance, for making improvements or repairs or to show the premises for releasing.  RHA may enter the premises at any time without advanced notification when there is reasonable cause to believe that an emergency exists.

9. In the event that either party initiates any legal action or proceeding to enforce its rights under this Contract, or in the event that the Housing Authority is obliged to initiate an action to evict the Live-In due to his/her failure to vacate the premises pursuant to Paragraph 4 of this Agreement, then the prevailing party will be entitled to recover its costs and attorney's fees incurred in said proceedings.  The Live-In grants the Housing Authority the right to offset any such fees and charges against the Security Deposit set forth in Paragraph 6.

10. The Agreement may be canceled on 48 hours notice if the information received from the Authority's inquiry with respect to driving records, employment history, criminal history, reference and substance abuse is unacceptable to the Authority.

Executed in Reno, Washoe County, Nevada, to be effective September 1, 2014.


DAVID C. MORTON
Executive Director

# EXHIBIT B

# EXHIBIT B

 **Housing Authority of the City of Reno**

## Family Rental Payment Method Authorization

La Autoridad de Viviendas de Reno se ha comprometido a ofrecer accesibilidad a sus programas y actividades para todos los clientes elegibles, inclusive para aquellas personas limitadas en sus habilidades del manejo del idioma Ingles. Por favor informe a nuestro personal si requiere otra forma diferente de comunicación que no sea verbal o por escrito en ingles.

During the Annual Recertification process, each family is given the option to choose between two methods of rental payment: calculated or flat. The choice of method is authorized by the family's Head of Household.

Calculated rents are derived by multiplying your household's adjusted monthly income by 30%. That amount is then reduced by established utility allowances. The resulting amount is what the family will pay for monthly rent. Calculated rents have no ceiling (maximum limit). If you choose to pay calculated rent, you must continue to report all changes in income as they occur so that your monthly rental payment can be recalculated.

Flat rents are derived by making a comparison of rents charged for units in the private market sector that are similar to your public housing unit. Since flat rents are a set monthly amount of rent, household income is NOT considered. Utility allowances are NOT utilized. Unlike calculated rents, a household paying flat rent is NOT required to report income changes. If the family remains on flat rent, the family will be required to certify family composition each year, and certify income every three years.

A family that has elected to pay flat rent may request the Housing Authority to switch to calculated (income-based) rent if the family is unable to pay the flat rent amount due to financial hardship. Financial hardship is determined by the Housing Authority in accordance with written policy and includes situations where:

- The family has experienced a decrease in income because of changed circumstances, including loss or reduction of employment, death in the family, or reduction in or loss of earnings or other assistance.
- The family has experienced an increase in expenses, because of changed circumstances, for medical costs or child care.

A family can request to switch from flat to calculated rent ONLY once during a given year. Once a family has switched to calculated rent, the family must report all subsequent changes (increase or decrease) in household income. Such income changes will result in the re-determination of calculated rent which could be <u>higher</u> than the established flat rent for the unit.

Based on the current information provided to RHA management staff by the undersigned family Head of Household, the calculated monthly rent for the family is $ ___751___. This amount is subject to re-determination based on changes in household income and composition.

The current flat rate is $ ___576___.

The family's choice of rental payment method, authorized by the Head of Household, is **(initial one)**:

___JV___    Calculated (income-based) Rental Payment

_____    Flat Rental Payment

_____        ___8/12/11___        _____
Head of Household                              Date                            RHA Staff
                                                                                        PHFamRentPayAuth.doc NCR 2-ply 03/28/07 Stk# 33105

1525 East Ninth Street • Reno NV 89512-3012 • (775) 329-3630 *fax* (775) 786-1712 TDD (775) 331-5138
*Serving Reno, Sparks, and Washoe County*

# EXHIBIT C

# EXHIBIT C

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), the undersigned hereby gives my consent in writing to become a party plaintiff against my Employer, Former Employer, and/or any and all its affiliated entities identified below. I authorize the filing of a copy of this consent form in Court. I further consent to join this and/or any subsequent or amended suit against the same or related defendant for wage and hour violations.

Dated this 8 day of _____July_____, 2016

Name: _____Jaime Villa_____
(Please Print)

Signature: _____Jaime Villa_____

Employer: RENO HOUSING AUTHORITY

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

- 1 -
CONSENT TO JOIN

# EXHIBIT D

# EXHIBIT D

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), the undersigned hereby gives my consent in writing to become a party plaintiff against my Employer, Former Employer, and/or any and all its affiliated entities identified below. I authorize the filing of a copy of this consent form in Court. I further consent to join this and/or any subsequent or amended suit against the same or related defendant for wage and hour violations.

Dated this __8__ day of ____July____, 2016

Name: __Melisa Chavez__
        (Please Print)

Signature: _Melisa Chavez_

Employer: RENO HOUSING AUTHORITY

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

- 1 -
CONSENT TO JOIN